# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

JOSE A. MARTINEZ,

      Plaintiff,

v.                                                                                    Civ. No. 19-489 GJF

ANDREW SAUL, *Commissioner of*
*Social Security*,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court upon Plaintiff Jose A. Martinez's ("Plaintiff's") "Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum" [ECF 13] ("Motion"). The Motion is fully briefed. *See* ECFs 15 (Commissioner's Response), 16 (Reply). Having meticulously reviewed the entire record and the parties' briefing, the Court concludes that the Administrative Law Judge's ("ALJ's") ruling should be **AFFIRMED**. Therefore, the Court will **DENY** the Motion.

## I.    FACTUAL BACKGROUND

Plaintiff was born in 1959. Administrative Record ("AR"), *passim*. He completed one year of post-secondary education. AR 174.[1] He worked as a computer-aided design ("CAD") technician until retirement in 2003, and then worked as a massage therapist, nurse assistant, and taxidermist. *Id.*[2] In August 2016, he applied for social security disability benefits, claiming that he suffered from a disability that began in January 2012. AR 15. He alleged that his disability

---

[1] The numerical citation to the AR corresponds to the black pagination located on the bottom right corner. Page one, however, begins five pages into the AR due to a prefatory index.

[2] Plaintiff worked as a CAD technician in the New Mexico Department of Transportation from 1978-2003, at which time he retired. AR 20, 32.

resulted from surgical-induced nerve damage, cervical and lumbar spine degenerative disk disease ("DDD"), radiculopathy (pinched nerve), headaches, hypertension, and depression. AR 173, 213.

In September 2016, the Social Security Administration (SSA) denied Plaintiff's claim, concluding that the "evidence did not show that [Plaintiff was] disabled." AR 15, 62. In January 2017, upon Plaintiff's request for reconsideration, the SSA again denied his claims. AR 15, 67. Plaintiff then requested a hearing, which was held in February 2018 before ALJ James Burke. AR 27, 73, 75.[3] In August 2018, the ALJ concluded that Plaintiff had not been under a disability from the alleged onset date in January 2012 through his date last insured in March 2013. AR 14, 20. In April 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision and affirmed that decision as the Commissioner's final decision. AR 1. Plaintiff then timely filed for judicial review in this District.

## II. PLAINTIFF'S CLAIMS

Plaintiff argues that the ALJ erred at two distinct but related stages in the sequential evaluation process: the RFC determination and the stage four analysis. Concerning the residual functional capacity ("RFC") determination, Plaintiff first alleges that the ALJ failed to conduct a "function-by-function" analysis when fashioning the RFC. Mot. 12. Plaintiff next asserts that the ALJ improperly made the RFC determination without sufficient record evidence, i.e., that the ALJ substituted his own medical opinion for that of a physician. *Id*. at 13. Lastly, Plaintiff accuses the ALJ of disregarding relevant medical evidence that post-dated the "date last insured" ("DLI").

Turning to the second theater of contention, the post-RFC analysis, Plaintiff submits that the ALJ fared no better. He asserts that because the ALJ must evaluate the RFC at step four and, because in Plaintiff's opinion the preceding RFC determination was flawed, *see supra*, the ALJ's

---

[3] Plaintiff was represented at the hearing by the same counsel who represents him in this appeal. AR 15, 29.

finding regarding Plaintiff's ability to perform his past work was not supported by substantial evidence. Plaintiff emphasizes that, even if the ALJ properly crafted the RFC, the ALJ nonetheless erred by failing to make specific findings about the physical and mental demands of Plaintiff's past work. Similarly, Plaintiff argues that, because the ALJ failed to make these specific past work findings, the step four requirement of testing the RFC against past work performed was flawed. Lastly, Plaintiff attacks the ALJ's findings concerning symptoms and severity, complaining that the ALJ incorporated boilerplate findings in violation of Tenth Circuit authority.

## III. APPLICABLE LAW

### A. Standard of Review

The Court's review of an ALJ's decision[4] is both legal and factual. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence." (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992))).

In determining whether the correct legal standards were applied, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The Court may reverse and remand if the ALJ failed to "apply correct legal standards" or "show . . . [he or she] has done so." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

---

[4] Under 42 U.S.C. § 405(g), courts review the Commissioner's "final decision," which in this case is the ALJ's August 2018 decision.

The Commissioner's findings "as to any fact, if supported by substantial evidence, *shall* be conclusive." 42 U.S.C. § 405(g) (emphasis added). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (brackets in original) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "And . . . the threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* (internal quotation marks and citation omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

Under this standard, a court should still meticulously review the entire record, but it may not "reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004)); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the *sufficiency* of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Therefore, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). Furthermore, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200) (brackets omitted).

Ultimately, if the correct legal standards were applied and substantial evidence supports the ALJ's findings, the Commissioner's decision stands and Plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin*, 365 F.3d at 1214.

### B. Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he is unable to "engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added).

The SSA has devised a five-step sequential evaluation process to determine disability. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). The claimant bears the burden of proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Williams v. Bowen*, 844 F.2d 748, 750-51, 751 n.2 (10th Cir. 1988). In the first four steps, the claimant must show (1) that "he is not presently engaged in substantial gainful activity," (2) that "he has a medically severe impairment or combination of impairments," and either (3) that the impairment is equivalent to a listed impairment[5] or (4) that "the impairment or combination of impairments prevents him from performing his past work." *Williams*, 844 F.2d at 750-51; *Grogan*, 399 F.3d at 1261.

If the claimant has advanced through step four, the burden of proof then shifts to the Commissioner to show that the claimant nonetheless retains sufficient RFC "to perform other work in the national economy in view of his age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146, n.5.

## IV. ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

In his August 2018 written decision, the ALJ affirmed that he carefully considered "all the evidence" and "the entire record." AR 15, 17.

---

[5] If the claimant can show that he has a listed impairment, he will be found to be disabled and no further steps will be analyzed. 20 C.F.R. § 404.1520(a)(4)(i-iv). Absent a sufficient showing of a listed impairment, the analysis moves on to step four. *Id.*

## A. Steps One through Three

At step one, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" from January 1, 2012, the alleged onset date of his disability, through March 31, 2013, his date last insured. AR 17. At step two, the ALJ found that Plaintiff had the sole severe impairment of cervical and lumbar degenerative disc disease. AR 17. The ALJ also considered Plaintiff's mental impairment (depressive disorder) but found it to be non-severe. AR 17-18.[6] At step three, the ALJ found that no impairment or combination thereof satisfied the criteria of a listed impairment. AR 18.[7]

## B. Residual Functional Capacity

Before performing the step four analysis, in which the ALJ considers whether a claimant can perform past work, the ALJ must first determine the claimant's RFC.[8] Here, the ALJ found that Plaintiff had the physical RFC to perform the full range of light work as defined by 20 C.F.R. § 404.1567(b). AR 18. As described below, the ALJ also discussed the evidence and reasoning that led to this RFC finding.

### 1. Plaintiff's Allegations

The ALJ began by reviewing Plaintiff's allegation that "pain caused by cervical degenerative disk disease prevents him from working." AR 19. The ALJ also reviewed Plaintiff's assertion that "neck pain radiated to his upper extremities, caused difficulty standing and bending,

---

[6] Because Plaintiff's appeal focuses only on his physical impairment, the ALJ's findings regarding Plaintiff's depression are not at issue.

[7] At the hearing, Plaintiff's counsel acknowledged that Plaintiff was "not contending that in Step 3 that a listing had been met." AR 31.

[8] See 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity."); but cf. Winfrey, 92 F.3d at 1023 (describing the RFC determination as technically the first part of step four).

and made him unable to sit for long periods." *Id.* As discussed below, however, the ALJ found

that "minimal treatment evidence and lack of documented ongoing dysfunction from January 1,

2012[,] through March 31, 2013[,] does not support the alleged functional limitations" and that

"the claimant's statements concerning the intensity, persistence and limiting effects of these

symptoms are not entirely consistent with the medical evidence and other evidence in the record."

*Id.*

### 2. *ALJ's Assessment*

#### a. Medical Evidence

The ALJ observed that the medical evidence of cervical spine impairments dated back to

1998, when a MRI revealed "mild degenerative changes in disc spaces from C3-4 to C6-7, as well

as right side neural foraminal narrowing at C3-4 and bilateral neural foraminal narrowing at C4-

5." AR 19 (citing AR 246-272). The ALJ also noted that a 2007 MRI revealed the same. *Id.*

(citing AR 318-402) (showing mild to moderate DDD). The ALJ also commented that, following

the 2007 MRI, Plaintiff "completed 12 sessions of physical therapy in December of 2007, with

discharge notes indicating increased strength, range of motion, improved function and balance,

although some residual pain remained." *Id.* (citing AR 387). In addition, the ALJ found that,

despite the above-mentioned limitations, Plaintiff "continued to perform work above substantial

gainful activity level throughout 2007 and 2008." *Id.* (citing AR 154-55 (detailed earnings query),

184 (work history report)).

The ALJ then considered the next installment in Plaintiff's medical history, which did not

occur until October 2011 when Plaintiff visited his primary care physician to report symptoms of

radiculopathy. AR 19, 377-78.[9] The ALJ noted that at this appointment Plaintiff's physical

---

[9] The Court notes that the examination notes relied on by the ALJ and Plaintiff during this period are handwritten and almost entirely illegible.

examination showed "moderate limitation on neck range of motion and increased pain on full extension, but also good grip strength," but no other abnormal findings were documented. *Id.* The ALJ also considered a follow up x-ray ordered as a result of that October 2011 examination, which showed "degenerative disc disease, facet arthropathy with the C5-6 most affected, and bony neural foraminal narrowing." AR 19, 345 (x-ray report).

It was at this point in documenting Plaintiff's medical history that the ALJ found that:

> Although the records shows [sic] a longitudinal history of cervical spine pain, *the only medical evidence from the relevant period of January 1, 2012 to March 31, 2013[,] consisted of one X-ray* that could reasonably be related to the period at issue. The evidence includes no other contemporaneous physical examination to show clinical correlation or abnormalities that could be expected to affect the claimant's functioning. During the relevant period, there is also no record of the claimant reporting any of the pain symptoms indicated during his testimony.

AR 20 (emphasis added). Nonetheless, the ALJ proceeded to consider Plaintiff's post-DLI evidence of cervical pain as follows:

> The next report by the claimant of cervical pain symptoms did not occur until June 2013, several months after the date last insured, when he reported neck and arm difficulty, as well as cramps in his right hand. He also reported that the pain in his neck and arms was making it difficult to perform work as a massage therapist. Physical examination revealed the claimant to be extremely muscular, and physical examination was normal. In June 2013, electromyogram (EMG) was normal, with no evidence of neuropathy or radiculopathy. Accompanying physical examination at that visit also revealed normal reflexes, motor strength and sensation. In December 2013, a second EMG and physical examination were normal. The following year, the claimant completed 12 sessions of physical therapy that resulted in the claimant having increased strength, improved function, as well as decreased pain.

AR 20 (internal citations omitted).

### b. RFC

The ALJ then found that—"[b]ased on the totality of the evidence"—Plaintiff needed "no further functional limitation than the full range of light work." AR 20; *see also* AR 18 ("After careful consideration of the entire record, the undersigned finds that, through the date last insured,

the claimant had the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b)."). In limiting Plaintiff to light work, however, the ALJ gave little weight to the state agency consultant—who had found there was insufficient evidence to complete the medical portion of the disability determination. AR 20, 49 (416 – Medical Evaluation at initial level) (consultant concluding, at the initial level, that "[t]here is insufficient evidence"), 59-60 (416 – Medical Evaluation at Reconsideration level) (separate consultant concluding, at the reconsideration level, that "[t]here is insufficient evidence"). In doing so, the ALJ viewed the evidence in the light most favorable to Plaintiff and found that Plaintiff's "cervical and lumbar degenerative disc disease limits [him] to light work." AR 20.

### C. Step Four

At step four, given the RFC described above, the ALJ found that Plaintiff—through the date last insured—was able to perform his past relevant work as a CAD technician. AR 20. The ALJ supported this conclusion in part by relying on the vocational expert's testimony that a "computer aided design technician, DOT 003.362-010, is classified as light, skilled work." AR 20. Therefore, the ALJ found that "because the claimant can sustain the demands of light work, he can perform these jobs as generally performed and as performed." *Id*. Consequently, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, at any time from January 1, 2012, the alleged onset date, through March 31, 2013, the date last insured." *Id.*

## V. ANALYSIS

### A. The RFC Was Legally Sound and Supported by Substantial Evidence

Plaintiff argues that the ALJ's RFC findings were erroneous because the ALJ (1) failed to conduct a function-by-function analysis, (2) substituted his own opinion for that of a medical

expert, (3) disregarded medical evidence that post-dated the DLI, and (4) failed to make specific findings concerning symptoms and severity.[10] Mot. 6-23. The Court will address each argument in turn.

### 1. Function-by-function analysis

In support of his function-by-function argument, Plaintiff relies on SSR 96-8p (S.S.A. July 2, 1996), which provides in pertinent part that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945." SSR 96-8p. Plaintiff insists that remand is warranted if the RFC assessment omits the function-by-function analysis. Mot. 12-13. Here, Plaintiff argues that the ALJ did not conduct this function-by-function analysis because he made no specific findings about Plaintiff's ability to sit, stand, walk, lift, carry, push or pull, but rather glossed over it when he limited Plaintiff to a full range of light work. Mot. 13. The Court rejects Plaintiff's argument.

As an initial matter, case law does not support Plaintiff's contention that SSR 96-8p requires automatic remand every time an ALJ fails to conduct a function-by-function analysis. To the contrary, the Tenth Circuit teaches that, "without a function-by-function analysis, an ALJ '*may* . . . overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do.'" *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014) (citing SSR 96-8p at *4) (emphasis added). Therefore, and with this in mind, an ALJ complies with SSR 96-8p—even without explicitly addressing a claimant's ability to sit, stand, walk, lift, carry, push or pull—if a court is able to "follow the adjudicator's reasoning [and] determine that correct legal

---

[10] Plaintiff separately enumerates his symptoms and severity argument from his attacks on the RFC. The Court, however, believes that argument is properly discussed along with the RFC. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined.").

standards have been applied." 767 F.3d at 957 (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense . . . [W]e cannot insist on technical perfection.")).[11]

The ALJ's narrative discussion enables this Court to follow his reasoning in limiting Plaintiff to a full range of light work. Indeed, when assessing Plaintiff's functioning, the ALJ considered Plaintiff's MRIs (showing "mild degenerative changes" and "mild to moderate" changes), physical examination notes ("discharge notes showing "increased strength, range of motion, improved function and balance"), Plaintiff's own work history ("claimant continued to perform work above substantial gainful activity level throughout 2007 and 2008"), x-rays, physical therapy notes, *and* evidence that post-dated the DLI. AR 19-20. He specifically noted that the "evidence includes no other contemporaneous physical examination to show clinical correlation or abnormalities that could be expected to affect the claimant's functioning." AR 20. And the ALJ still limited Plaintiff to light work even though "during the relevant period, there [was] *no record of the claimant reporting any of the pain symptoms indicated during his testimony*." *Id*. (emphasis added).[12]

_____

[11] Moreover, an ALJ's failure to fully describe a claimant's ability to perform all "the specific work-related functions" is not, by itself, reversible error—particularly when the ALJ "did not overlook" the functional limitation complained of and the failure "was not critical to the outcome of the case." *Hendron*, 767 F.3d at 957 (holding that an ALJ's failure to "find explicitly that [claimant] was capable of sitting for six hours during a regular eight-hour work day" was not reversible error because the ALJ nevertheless "did not overlook [claimant's] problems with sitting" and because a failure to make such an explicit finding "was not critical to the outcome of [the] case.").

[12] This paragraph further demonstrates that if an omission did occur, any such omission "was not critical to the outcome of the case." *Hendron*, 767 F.3d at 957.

When the Court uses its common sense, the Court can readily conclude that the ALJ's restriction of Plaintiff to light work accounted for any limitations that Plaintiff believes he had (or were not taken into account by the ALJ on a function-by-function basis). In this Court's review of the record—with a specific focus on the areas of the record that Plaintiff cites as authority—Plaintiff failed to establish any of the limitations he now alleges the ALJ failed to account for in a function-by-function analysis. For example, Plaintiff did not contend that he had any problems squatting, bending, standing, walking, sitting, kneeling, talking, hearing, stair climbing, etc., AR 190, and his complaint regarding lifting alleged only that he was limited to lifting over twenty-five pounds. *Id*. Moreover, as the ALJ explained *in his narrative*, Plaintiff's testimony did not accord with the record nor did it support a finding that any limitations occurred during the relevant period of January 1, 2012-March 31, 2013. *Compare* AR 190 (can lift twenty-five pounds) with 36 (I could probably lift 10 to 15 pounds); *see* 36 ("I had some problem as far as lifting, *but after 2013*") (emphasis added).[13] But even more to the point, "[t]he regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." SSR 83-10 *5.

Thus, a restriction to light work reasonably accounted for any limitation that Plaintiff believes the ALJ failed to account for. Indeed, it shows that the ALJ "did not overlook" any limitations. *Hendron*, 767 F.3d at 957. And with respect to sitting and standing, there is simply

---

[13] *See also* AR 36 (Question: "So are you attributed [sic] your left upper extremity problems to the cyst or to the problems with your neck?" Answer: "I would attribute it to my neck because I suffered with that before." Question: "Did you have those symptoms of dropping things before the cyst was discovered?" Answer: "Yes, I had some problem with -- as far as the strength, but not giving -- giving out completely. That was after the aspiration.").

no factual support in the record to support further limitations.[14]  Lastly, Plaintiff has not established how the alleged procedural defect prejudiced him.[15]

In sum, this Court finds that the ALJ satisfied SSR 96-8p, i.e., the Court can follow the ALJ's reasoning and determine that the ALJ applied correct legal standards.  *See Keyes-Zachary v. Astrue*, 695 F.3d at 1166.

### 2.  *RFC is not a medical assessment*

Plaintiff's next argument can be summed up as follows: an RFC limitation of light work in the absence of an expert medical opinion to that effect inappropriately allows an ALJ to substitute his own lay opinion for that of a physician.  *See* Mot. 13-14.  The Court disagrees.

First, one of the authorities that Plaintiff cites for this proposition, *Rivera–Torres v. Secretary of Health and Human Services*, 837 F.2d 4 (1st Cir. 1988), is not binding in this Circuit nor apparently is it even still applicable in its own.  *See Langley v. Astrue*, 777 F. Supp. 2d 1250, 1253 (N.D. Ala. 2011) ("The court has reviewed the case law in the First Circuit establishing the rule requiring an RFC assessment from a physician ("First Circuit Rule") and concludes that it is based upon regulations that have been superseded.").  Second, in this Circuit the "ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."  *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (citing 20 C.F.R. § 416.927(e)(2); SSR 96–5p, 1996

---

[14] "The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability."  *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004).

[15] *See Berensen v. Comm'r, SSA,* 772 F. App'x 644, 646 (10th Cir. 2019) (unpublished) (concluding ALJ did not overlook vocational testimony because, among other things, plaintiff did "not identify any mismatch between the findings on residual functional capacity and the vocational expert's testimony."); *see also Bell v. Colvin*, 645 F. App'x 608, 613 (10th Cir. 2016) (unpublished) (rejecting argument that ALJ failed to account for fibromyalgia limitation because, among other things, the plaintiff "made no argument or showing as to how the RFC determination in this case would have been different if the ALJ had listed fibromyalgia as a severe impairment.").  Here, Plaintiff alleges only that the ALJ failed to conduct a function-by-function analysis *without* explaining how that failure in turn yielded an RFC incompatible with a light work limitation.

WL 374183, at *5); *see also id.* ("We also *reject claimant's implicit argument that there must be specific, affirmative, medical evidence on the record* as to each requirement of an exertional work level before an ALJ can determine RFC within that category.") (emphasis added). Consequently, the Court rejects this argument. [16]

### 3. Post-DLI Evidence

Overall, the medical records in this case are sporadic, with approximately half post-dating the DLI. Nonetheless, Plaintiff first argues that this post-DLI evidence is relevant and that the ALJ committed a costly error by disregarding it in the sequential evaluation process. Plaintiff contends that the following statement by the ALJ demonstrates that he simply brushed aside this evidence: "Although the records show a longitudinal history of cervical spine pain, *the only medical evidence from the relevant period of January 1, 2012[,] to March 31, 2013[,] consisted of one X-ray that could be reasonably related to the period at issue*." Mot. 14 (emphasis in original). More specifically, Plaintiff claims that the ALJ altogether ignored a June 2013 MRI and ear, nose, and throat records that showed moderate to severe neural foraminal narrowing at C5-6, and a large left thyroid cyst. *Id.* at 15. The Court finds that the ALJ adequately considered all the evidence for the reasons the follow.

As a starting point, all evidence—whether it post-dates the DLI or not—must "relate to the time period for which the benefits were denied." *Johnson v. Berryhill*, 679 F. App'x 682, 687 (10th Cir. 2017) (unpublished) (quoting *Hargis v. Sullivan*, 945 F.2d 1482, 1493 (10th Cir.

---

[16] Plaintiff also cites *Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004) to support his argument that the ALJ substituted his own opinion for that of a medical professional. There, an ALJ improperly substituted his own opinion by noting that the plaintiff "did not require an assistive device for his neck," even though there was "no evidence that any physician recommended such a device or suggested that one would have provided any pain relief." *Id.* Here, no such substitution occurred.

1991)).[17]  With that in mind, the Court turns to Plaintiff's assertion that the ALJ's statement confirms that he did not consider any post-DLI evidence irrespective of its relevance.  This Court believes that Plaintiff misunderstands the context surrounding that statement and concludes that the ALJ *actually did* consider all evidence in the record.  Indeed, immediately after the sentence on which Plaintiff has focused, the ALJ's opinion discussed post-DLI medical records extending all the way through December *2014*.  *See, e.g.,* AR 20 ("The next report by the claimant of cervical pain symptoms did not occur until June 2013"); *see also id.* ("*Based on the totality of the evidence*, the undersigned concludes that the evidence supports no further functional limitation than the full range of light work." (emphasis added)).  Therefore, in the Court's view, the ALJ did not disregard the post-DLI evidence, but rather considered it.[18]

With respect to the June 2013 MRI, the Court agrees with Plaintiff that the ALJ did not explicitly mention it in his written decision.  The Court further agrees that the MRI showed "moderate" and "severe" neural foraminal narrowing and a neck cyst.  AR 280.  But the Court does not agree that this omission ran afoul of any legal rule, i.e., that an ALJ "must discuss uncontroverted evidence he chooses not to rely on, as well as significantly probative evidence he

---

[17] It bears emphasizing that Plaintiff's DLI was March 31, 2013, and he waited until August 11, 2016 – nearly three-and-a-half years later – to file his claim for disability.  AR 15.  Consequently, the hearing before the ALJ (February 6, 2018) occurred almost five years after the DLI.  As the ALJ and Plaintiff's counsel recognized at the hearing, Plaintiff faced a "difficult issue" with such a remote DLI.  AR 41, 43.

[18] Plaintiff relies on *Baca v. Dep't of Health & Human Servs*., 5 F.3d 476 (10th Cir. 1993), to support his argument that the ALJ failed to properly consider the post-DLI evidence.  That reliance is misplaced.  In *Baca*, the ALJ completely disregarded *all* post-DLI evidence.  5 F.3d 476, 479 (10th Cir. 1993) ("Based on this direct and indirect evidence, the ALJ's conclusion that *Mr. Baca failed to submit "any" probative medical evidence* documenting his condition before December 31, 1976, is unsupported by substantial evidence." (emphasis added)).  In the instant case, however, the ALJ did not find that Plaintiff failed entirely to submit probative medical evidence of disability, rather he found that "[a]lthough the records shows *a longitudinal history of cervical spine pain*, the only medical evidence from the relevant period of January 1, 2012 to March 31, 2013 consisted of one X-ray *that could reasonably be related* to the period at issue" and that "[b]ased on the totality of the evidence . . . no further functional limitation" was appropriate.  AR 20.  It is important to remember that irrespective of whether this Court would reach the same conclusion, i.e., that the records were reasonably related to the period at issue, the ALJ will be affirmed as long as the agency decision is supported by substantial evidence.  *See Oldham*, 509 F.3d at 1257–58.  Here, it is.

rejects." Mot. 15 (quoting *Frantz v. Astrue*, 509 F.3d 1299, 1303 (10th Cir. 2007)).[19]  This is

because "[t]he mere diagnosis of [of a condition] . . . says nothing about the severity of the

condition."  *Scull v. Apfel*, 221 F.3d 1352 (10th Cir. 2000) (unpublished table case).

      To that end, the ALJ specifically discussed Plaintiff's examinations that were conducted in

response to the June 2013 MRI (rather than the MRI itself).  The ALJ specifically addressed

Plaintiff's "reported neck and arm difficulty, as well as cramps in his right hand and pain in his

neck and arms was making it difficult to perform work as a message therapist."  AR 20 (citing AR

322).  The ALJ noted that the first examination after the June 2013 MRI showed that Plaintiff's

"electromyogram (EMG) was normal, with *no evidence of neuropathy or radiculopathy*" and the

"[a]ccompanying physical examination at that visit [] *revealed normal reflexes, motor strength

and sensation*."  AR 20 (citing AR 322) (emphasis added); *see also id*. ("In December 2013, a

second EMG and physical examination were normal" (citing AR 318)).  In addition, the ALJ

discussed the progression of Plaintiff's "diagnosis" (again rather than the MRI itself).  *See* AR 20

(citing AR 404 (physical therapy discharge, noting increased range of motion/strength, improved

function/posture/balance, and decreased pain/edema)).[20]

      The last argument that Plaintiff makes about his post-DLI evidence concerns medical

records from an ear, nose, and throat doctor that specifically relate to the neck cyst.  *See* Mot. 15

---

[19] In addition, *Frantz* as well as *Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007) (recognizing the pick and choose rule) dealt with an ALJ's rejection of restrictions assessed by medical professionals in *opinion evidence*, which of course does not exist in this case.  The ALJ in this case did not reject or fail to address the existence of cervical pain, and nowhere in the record does evidence exist of restrictions being assessed on Plaintiff by a medical professional.

[20]  Plaintiff alleges that his symptoms returned in 2014 and that the ALJ failed to account for this "relevant evidence." Mot. 15 (citing AR 352-53).  A review of AR 352-53 does not come close to tipping the scales in Plaintiff's favor. From what the Court can discern, the (almost illegible) handwritten notes show that Plaintiff reported "some left arm numbness" and "mild weakness" but notably his neck had "good ROM" and no "edema."  AR 352-53.  As the Court has stated above, an "ALJ does not have to discuss every piece of evidence."  *Frantz v. Astrue*, 509 F.3d 1299, 1303 (10th Cir. 2007) (citation omitted).  This is especially true, when, as here, that piece of evidence at best shows some residual effects of the removal of a neck cyst but establishes nothing about disability.

(citing AR 302).  Plaintiff again contends that the ALJ violated the pick-and-choose rule by failing to explain why he did not give more credit to these records.  Yet again, however, the Court discerns no pick-and-choose infraction, substantially for the same reasons articulated above.  For one, the record cite to which Plaintiff directs this Court merely states that Plaintiff "ha[d] no pain, no hoarseness, no headache. He does feel symptoms in the Left shoulder."  AR 302 (initial evaluation and second opinion of neck cyst).  The specific symptoms that Plaintiff alleged, i.e., "numbness" and loss of feeling in his "pinkie finger," AR 304-8 (post-operation follow-up examinations), were adequately captured by the ALJ's discussion of Plaintiff's EMGs (used to diagnose numbness and weakness) and physical therapy records (which obviously gives a clear insight into a patient's symptoms and the progression of those symptom).  *See* AR 20, 318, 322, 404.  Furthermore, the cyst was removed and the record contains no evidence that it ever returned.

In addition, there is no medical evidence that any symptoms relating to the cyst predate the DLI.  For example, Plaintiff was not diagnosed with the cyst until several months after the DLI and the record is entirely devoid of any retrospective diagnosis by a physician that would connect the cyst to Plaintiff's symptoms prior to the DLI (as noted by the ALJ).  And even then, a retrospective diagnosis, without more, says quite little about disability.  *See Adams v. Chater*, 93 F.3d 712, 714 (10th Cir. 1996) ("While a treating physician may provide a retrospective diagnosis of a claimant's condition, a retrospective diagnosis without evidence of actual disability is insufficient.") (internal quotations and citation omitted).  Here, the record contains no medical opinion regarding this issue (or any issue for that matter), but only some sparse examination notes that show the cyst was removed and did not recur.  *See* AR 307, 315; *see also* AR 318, 322 (EMGs showing no evidence of neuropathy or radiculopathy), 404 (improvement with physical therapy), 505 (dated 6/24/2016) (demonstrating complete absence of neck complaints after physical therapy

until 2016). Accordingly, the Court concludes that the ALJ properly considered the post-DLI evidence for its longitudinal value. Nonetheless, because substantial evidence supported the ALJ's decision that Plaintiff did not carry his burden at step four, the Court will not overturn that decision.

4. *ALJ's findings regarding Plaintiff's symptoms were supported by substantial evidence.*

Plaintiff next argues that the ALJ's findings regarding the evaluation of his symptoms were "merely boilerplate of the type condemned in this Circuit." Mot. 19 (citing *Timmons v. Barnhart*, 118 F. App'x 349, 353 (10th Cir. 2004) (unpublished)). Specifically, Plaintiff alleges that the ALJ failed to analyze any of the relevant factors under 20 C.F.R. §§ 404.1529(c) and 416.945(c) as required by SSR 16-3p. Mot. 19-20. This Court disagrees for the reasons that follow.

First, the Tenth Circuit remanded the *Timmons* case because, among other things, "the ALJ made a conclusory statement that he found Timmons' testimony not credible for the reasons set forth in the body of the decision," and then failed to provide "specific reasons given for discounting Timmons' credibility." 118 F. App'x at 353 (internal quotations and citations omitted). Therefore, in this Circuit, an ALJ's use of boiler plate "is problematic only when it appears 'in the absence of a more thorough analysis.'" *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1170 (10th Cir. 2012) (quoting *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004)). The ALJ performed just such an analysis in this case, as numerous record excerpts demonstrate. *See, e.g.*, AR 19 ("[h]e testified that he was in constant pain despite taking Cymbalta, however the record does not indicate this was prescribed during the relevant period.") ("[t]he minimal treatment evidence and lack of documented ongoing dysfunction from January 1, 2012 through March 31, 2013 does not support the alleged functional limitations.") (observing that "[records] indicate only mild to moderate degenerative disc disease") ("[d]espite the limitations, the claimant continued to perform work above substantial gainful activity level."); 20 ("[t]here is also no record of the claimant reporting

18

any of the pain symptoms indicated during his testimony.") ("EMG was normal, with no evidence of neuropathy or radiculopathy") ("the claimant completed 12 sessions of physical therapy that resulted in the claimant having increased strength, improved function, as well as decreased pain.").

Thus, the ALJ's "credibility assessment, while perhaps not perfect, was supported by substantial evidence." *Scott v. Berryhill*, 695 F. App'x 399, 406 (10th Cir. 2017) (unpublished); *see also id*. ("The ALJ made extensive findings concerning [] credibility. These findings are scattered throughout her decision. When considered together, they demonstrate the ALJ's compliance with her duty to evaluate and discuss factors relevant to the claimant's credibility." (citing SSR 96–7p)).[21]

### B. The ALJ's Post-RFC Step Four Analysis Was Sound and Supported by Substantial Evidence

At step four, the ALJ found that Plaintiff was able to perform his past relevant work as a CAD technician, both as actually performed and as generally performed. AR 20-21. Plaintiff's final attacks concern every phase of the step four analysis. Plaintiff first argues that the ALJ erred at phase two because his past work finding was premised upon an incorrect RFC and therefore unsupported by substantial evidence. Mot. 17. Plaintiff asserts that the ALJ erred again at phase two because he failed to make specific findings about the physical and mental demands of Plaintiff's past work. *Id*. Lastly, Plaintiff argues that the phase two error spilled over to phase three and thus precluded an acceptable comparison of the RFC to that past work. *Id*. at 18. The Court disagrees for the reasons that follow.

---

[21] In March 2016, SSR 96-7p was superseded by SSR 13-3p to "eliminate[e] the use of the term 'credibility'" and to "clarify that subjective symptom evaluation is not an examination of an individual's character." *Watts v. Berryhill*, 705 F. App'x 759, 763 (10th Cir. 2017) (quoting SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016)). "However, the factors to be considered under SSR 96-7p are the same as under SSR 13-3p." *Id*.

### 1. *Legal Standard and Phase One*

If a claimant's impairments do not meet or equal in severity one of the listings in Appendix 1 of the regulations, the ALJ then determines at step four whether the claimant can perform his past relevant work. This inquiry involves three phases:

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

*Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quoting *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996)); *see also* SSR 82-62, 1982 WL 31386, at *4. Because the Court has already rejected Plaintiff's arguments that the RFC was infirm, the Court can deny Plaintiff's phase one argument and proceed to phase two.

### 2. *Phase Two*

The result remains unchanged at the second phase. To make a sufficient phase two finding, an ALJ must obtain adequate "factual information about those work demands which have a bearing on the medically established limitations." *Wells v. Colvin*, 727 F.3d 1061, 1074 (10th Cir. 2013) (quoting SSR 82–62, 1982 WL 31386, at *3 (1982)). Here, Plaintiff alleges that the ALJ failed to make findings about the specific physical and mental demands of a CAD technician. Specifically, Plaintiff asserts that the ALJ relied solely—without additional specific physical and mental findings—on the vocational expert's testimony that the CAD technician occupation is classified as light, skilled work. This reliance, Plaintiff contends, was erroneous and should lead to remand. His authority for this proposition is *Sissom v. Colvin*, 512 F. App'x 762, 768 (10th Cir. 2013)

(unpublished) and *Winfrey*, 92 F.3d at 1023. Upon inspection, neither *Sissom* nor *Winfrey* bear the weight that Plaintiff asks them to carry.

In *Sissom*, the ALJ assessed specific postural limitations, which included occasional climbing, balancing, stooping, kneeling, crouching, and crawling. 512 F. App'x at 769. The Tenth Circuit remanded because, among other things, the "ALJ did not inquire of [claimant] the physical demands of her [past relevant work] as a housekeeper, cashier/checker, or deli manager that would have a *bearing on these [specific] physical limitations.*" *Id.* (emphasis added). That is not the case here. Notably, in the instant case, the ALJ *did not assess* any specific postural limitations which therefore changed what was required in the phase two analysis. *Wells v. Colvin*, 727 F.3d 1061, 1075 (10th Cir. 2013) ("The ALJ's phase-two task is case-dependent." (citing SSR 82–62, 1982 WL 31386, at *3)). What the ALJ did do, however, was limit Plaintiff to a full range of light work. Therefore, on the facts before us, for the ALJ to comply with *Winfrey*, he "needed only to obtain enough information regarding [this] limitation[] to determine whether [Plaintiff] could perform h[is] [prior relevant work] as a [CAD technician] despite [that limitation]." *Wells*, 727 F.3d 1075 (10th Cir. 2013). The vocational expert provided that information (with assistance from the Dictionary of Occupational Titles) and the ALJ made a specific finding—based on that information—that Plaintiff's past relevant work complied with the limitation assessed in the RFC, i.e., full range of light work. *See* AR 20 ("the vocational expert testified that the claimant's past work as a computer aided design technician . . . is classified as light, skilled work . . . because the claimant can sustain the demands of light work, he can perform these jobs as generally performed and as performed."); *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) ("The ALJ may rely on the Dictionary's job description for claimant's job

category as "presumptively applicable to a claimant's prior work." (citation omitted)).[22]   The

ALJ's development of the facts were adequate, and no additional findings were necessary.[23]

### 3. Phase Three

Plaintiff argues here that, because the ALJ "did not complete phase two correctly, he could

not make the necessary phase three findings comparing Plaintiff's RFC with the demands of his

past work."  Mot. 18.   Plaintiff believes the ALJ erred in failing to ask the vocational expert

whether Plaintiff could perform his past relevant work.  *Id.*  The Court again disagrees with

Plaintiff. To begin, this Court found no error in the ALJ's phase two finding.  Secondly, no

regulation or case law requires the ALJ to specifically question the vocational expert about whether

a claimant could perform his past work.  Lastly, the ALJ found that Plaintiff had the RFC to

perform the *full range* of light work (as just described above), thus any additional questioning

---

[22] Plaintiff's own account of what was required of him as a CAD technician also supports that the occupation was light work.  *See* AR 193 (Plaintiff representing that the heaviest weight lifted was 20 pounds and that he would only lift 10 pounds frequently) ("I lifted and carried highway design plans on occasion maybe 15 minutes three times a week").

[23] In his Reply, Plaintiff raises an entirely new argument that substantial evidence did not support the ALJ's finding that Plaintiff could perform the occupation of CAD technician as actually performed, i.e., that his past work required less of him than the work described in the Dictionary of Occupational Titles.  *See* Reply 4-5.  Besides Plaintiff having included no authority on point (Plaintiff does cite to *Sissom* again, but that case is factually distinguishable and offers him little help), allowing Plaintiff to proffer an entirely new argument in his Reply would amount to allowing him another bite at the apple.  Furthermore, the Tenth Circuit follows the general rule that an argument raised for the first time in a reply brief is deemed abandoned or waived.  *See, e.g.*, *United States v. Redcorn*, 528 F.3d 727, 738 n.4 (10th Cir. 2008) (citing *Hanh Ho Tran v. Trustees of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004) ("Issues not raised in opening brief are deemed abandoned or waived.") (citations omitted)).  In social security cases, "the district court acts as a first-tier appellate court."  *Hamilton*, 961 F.2d at 1501 (10th Cir. 1992) (citation omitted).  This Court is not, therefore, required to consider any issues raised for the first time in Plaintiff's reply brief.  *See Guidry v. Astrue*, Civ. No. 08–1846, 2009 WL 4884282, at *5, n.8 (D. Colo. Dec. 10, 2009) (citing *M. D. Mark, Inc. v. Kerr–McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009)) (noting that "the general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief").  *Accord Wheeler v. C.I.R.*, 521 F.3d 1289, 1291 (10th Cir. 2008) (issues raised for the first time in a reply brief are generally deemed waived).

about whether Plaintiff could perform an occupation classified as light work would be redundant. Consequently, the Court rejects Plaintiff's phase three argument.

## VI. CONCLUSION

For the foregoing reasons, the Court holds that the ALJ applied the correct legal standards and that his findings and decision were supported by substantial evidence.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **AFFIRMED** and that the instant cause is **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
***Presiding by Consent***